172 Cal.App.4th 488 (2009)
DANA BRUNS, Plaintiff and Appellant,
v.
E-COMMERCE EXCHANGE, INC., et al., Defendants and Respondents.
No. B201952.
Court of Appeals of California, Second District, Division Five.
March 23, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*491 Law Offices of Kevin M. Tripi and Kevin M. Tripi for Plaintiff and Appellant.
Horvitz & Levy, Bradley S. Pauley, Robert H. Wright; Bremer Whyte Brown & O'Meara, Nicole Whyte and Stephanie N. Rachel for Defendant and Respondent E-Commerce Exchange, Inc.
Duane Morris, Max H. Stern, W. Andrew Miller and Jessica E. La Londe for Defendants and Respondents CSB Partnership, Chris & Tad Enterprises, CSB & Ellison, LLC, CSB & Hinckley, LLC, CSB & Humbach, LLC, CSB & McCray, LLC, and CSB & Perez, LLC.
Quinn Emanuel Urquhart Oliver & Hedges, Jon Steiger, G. Lisa Wick and Andrea L. Manka for Defendant and Respondent Flagstar Bank.
Casello & Lincoln and James H. Casello for Defendants and Respondents Clayton Shurley dba Clayton Shurley's Texas BBQ, Clayton Shurley's Texas BBQ, Inc., Clayton Shurley's Real BBQ, Inc., Elliot McCrosky dba California Homefinders and E&N Financial, Daniel Quon, Daniel E. Quon, O.D., Inc., and Fax.com, Inc.

*492 OPINION
MOSK, J. 

INTRODUCTION
Plaintiff and appellant Dana Bruns (plaintiff) brought an action in the Orange County Superior Court in 2000. There were various amendments and substitutions of parties. The trial court stayed proceedings and then lifted the stay for discovery. It then stayed proceedings pending resolution of an appeal in another case. There were further stays of discovery and a stay of all proceedings in connection with a petition for coordination with other cases. The petition for coordination was granted and the case transferred to the Los Angeles Superior Court. Plaintiff obtained a default as to certain defendants. Proceedings were again stayed, with that stay lifted only for purposes of serving unserved parties. Ultimately the discovery stay was lifted.
The trial court granted a motion to dismiss the action pursuant to Code of Civil Procedure section 583.360,[1] which requires dismissal of an action not brought to trial within five years of the commencement of the action. The trial court, under section 583.340, subdivision (b) excluded from the computation of time when an action must be brought to trial, only periods when the entire action was stayed. The trial court did not rule on the alternative motion to dismiss under section 583.210 for the failure of plaintiff to serve a party with a summons and complaint. Discretionary dismissal under section 583.410, subdivision (a) was not raised in the trial court.
On appeal from the judgment entered in the dismissal order, we hold that a partial stay of an action constitutes a stay of the prosecution of the action within the meaning of section 583.340, subdivision (b), and therefore, the trial court erred in dismissing the action under section 583.360. As discussed in the unpublished portion of this opinion, we remand the matter to the trial court to rule on the motion brought under section 583.210failure to serve timely the summons and complaint.

BACKGROUND
On February 22, 2000, plaintiff brought an action in Orange County Superior Court on behalf of herself and a putative class of others similarly situated, against defendant and respondent E-Commerce Exchange, Inc. (ECX), Flagstar Bank, Clayton Shurley's Texas BBQ, and Does 1 through 500, inclusive, for allegedly sending unsolicited advertisements to telephone *493 facsimile machines in violation of the Telephone Consumer Protection Act of 1991 (TCPA), 47 United States Code section 227(b)(1)(C). Through subsequent amendments ending in a fifth amended complaint and substitutions for fictitiously named defendants, plaintiff added causes of action for violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and negligence, and named additional defendants and respondents CSB Partnership; CSB & Perez, LLC; CSB & Hinckley, LLC; CSB & McCray, LLC; CSB & Ellison, LLC; CSB & Humbach, LLC; Chris & Tad Enterprises (CSB defendants); Clayton Shurley doing business as Clayton Shurley's Texas BBQ; Clayton Shurley's Real BBQ, Inc.; Elliot McCrosky doing business as California Homefinders and E&N Financial; Daniel Quon; Daniel E. Quon, O.D., Inc.; and Fax.com, Inc.[2] On May 6, 2004, on a petition for coordination by defendants Fax.com, Inc., and Kevin Katz (who, apparently, is no longer a party to this action), plaintiff's case was transferred to the Superior Court in Los Angeles County for coordination with other cases.
On May 24, 2000, the trial court, Judge William F. McDonald, imposed a discovery stay and ruled that plaintiff's eight pending discovery motions were rendered "moot" by the stay. The trial court's minute order states, "Discovery is ordered stayed until the entry of CMO [case management order]." ECX's notice of ruling states, "All discovery, discovery issues and motions are stayed pending further order of the Court . . . ." On June 16, 2000, the trial court entered a case management order that states, in part, "On May 24, 2000, this Court stayed discovery pending entry of a Case Management Order. . . . The stay on discovery is hereby lifted." The trial court's June 16, 2000, minute order states that two motions to compel discovery set for June 21, 2000, were "moot" and, thus, vacated. On July 12, 2000, the trial court "further clarified its prior Orders with respect to the reopening of discovery." The trial court ruled that, except for certain identified interrogatories, "all discovery, if deemed necessary or advisable to the propounding party, would need to be re-served. All previous discovery motions remain vacated and moot as a result of this ruling."
On June 13, 2002, the trial court stayed this action for all purposes pending resolution of the appeal in Kaufman v. ACS Systems, Inc. (2003) 110 *494 Cal.App.4th 886 [2 Cal.Rptr.3d 296], which case addresses, in relevant part, whether a plaintiff has a private right of action for a violation of the TCPA in state court. On October 21, 2003, after the Court of Appeal's opinion in Kaufman v. ACS Systems, Inc., that recognized such a cause of action (110 Cal.App.4th at pp. 895-896), the trial court lifted the stay in this action.
On December 3, 2003, the trial court held a review hearing at which it ordered that "All discovery is stayed." On January 15, 2004, the trial court lifted the stay.
On January 30, 2004, the trial court set a hearing for March 4, 2004, on the petition for coordination and ordered, "All hearings, orders, motions, discovery or other proceedings are hereby stayed in all cases subject of [sic] the petition for coordination until a determination whether coordination is appropriate." On April 7, 2004, the trial court granted the petition for coordination. On May 6, 2004, this case was assigned to Judge Charles W. McCoy of the Los Angeles Superior Court. The assignment order states, "Immediately upon assignment, the coordination trial judge may exercise all the powers over each coordinated action of a judge of the court in which that action is pending."
On January 15, 2004, plaintiff obtained entry of ECX's default. On January 23, 2004, plaintiff obtained entry of CSB Partnership's default. On November 8, 2004, upon motions, the trial court set aside the entry of defaults against ECX and CSB Partnership.
On August 2, 2004, Judge McCoy issued an order setting the initial status conference for August 17, 2004. In the order, Judge McCoy also ordered, "To facilitate the orderly conduct of this action, all discovery, motion and pleading activity is temporarily stayed pending further order of this court." At the initial status conference on August 17, 2004, Judge McCoy ordered, "The Stay is lifted for the sole purpose of serving any unserved parties." Further, Judge McCoy set October 22, 2004, for hearing "any Motions Re Lifting Stay so as to Enforce Existing Judgment." Judge McCoy never did lift the August 2, 2004, stay.
On April 20, 2005, Los Angeles Superior Court Judge Carolyn B. Kuhl, to whom this case was reassigned effective January 3, 2005, entered a discovery order that required, among other things, that respondents respond to specified interrogatories and document requests. Judge Kuhl set a deposition date for Fax.com, Inc., and permitted other depositions to be scheduled, but did not otherwise lift the stay imposed on August 2, 2004. On July 11, 2006, Judge Kuhl "lifted the stay on discovery, and ordered that the parties may conduct open discovery."
*495 On November 22, 2006, the CSB defendants, except for CSB Partnership, filed a motion to dismiss plaintiff's fifth amended complaint on the ground that plaintiff failed to serve the CSB defendants other than CSB Partnership with a summons and complaint within three years of the commencement of the action as required by section 583.210, and on the ground that plaintiff failed to bring her action to trial within the five-year statutory period as required by sections 583.310 and 583.360. CSB Partnership and apparently all other defendants except Flagstar Bank subsequently joined this motion to dismiss the action.[3]
On November 22, 2006, ECX moved to dismiss plaintiff's fifth amended complaint pursuant to sections 583.310 and 583.360, subdivision (b) on the ground that plaintiff failed to bring her action to trial within the five-year statutory period. It appears that all defendants joined ECX's motion.[4] The trial court granted respondents' motion to dismiss under sections 583.310 and 583.360, ruling that plaintiff failed to bring her action to trial within the required time.
In ruling on respondents' motion to dismiss plaintiff's fifth amended complaint, the trial court under section 583.340, subdivision (b), excluded certain time periods. It ruled that the 23-day period from May 24, 2000, when there was an order staying discovery to June 16, 2000, was included within the five-year period within which plaintiff was to bring her action to trial, because significant litigation activity occurred during the period. The trial court ruled, it was not impossible, impracticable or futile "to progress toward bringing this action to trial pursuant to section 583.340(c)." In making its ruling, the trial court also rejected plaintiff's argument that the May 24, 2000, stay was lifted on July 12, 2000, rather than on June 16, 2000.
The trial court excluded from the five-year period within which plaintiff was to bring her action to trial the 495-day period from June 13, 2002, when there was an order staying proceedings pending an appeal in another case, to October 21, 2003. The trial court ruled that the 44-day period from December 3, 2003, when there was an order staying discovery, to January 15, 2004, was included within the five-year period within which plaintiff was to bring her action to trial because it was not impossible impracticable or futile "to make progress toward bringing this action to trial pursuant to section 583.340(c)." In its ruling, the trial court noted that in her opposition to the petition for coordination, plaintiff stated that her case "`has been aggressively litigated, with extensive discovery and law and motion undertaken. Pre-trial activities in the Bruns action are largely completed.'"
*496 The trial court excluded from the five-year period the 97-day period from January 30, 2004, when all proceedings were stayed pending resolution of the petition to coordinate proceedings, until May 6, 2004. The trial court noted that the periods during which ECX and CSB Partnership were in default overlapped with other periods that it had excluded from the five-year period within which plaintiff was to bring her action to trial. The trial court ruled that the periods that did not overlap with other excluded periods were included within the five-year period because counsel for the defaulting respondents claimed not to have been served with the operative complaint and offered to stipulate to set aside the defaults, and plaintiff's counsel chose not to agree to the stipulation, thus rejecting a means of continuing with the action. In addition, the trial court ruled it was not impossible, impracticable, or futile to bring plaintiff's action to trial during the period of the defaults, as other litigation activity continued.
The trial court excluded from the five-year period, the 15-day period from August 2, 2004, when the trial court ordered a temporary stay to August 17, 2004, when the trial court lifted the stay solely for purposes of serving unserved parties. In so ruling, the trial court rejected plaintiff's contention that the stay remained in effect until the trial court lifted the discovery stay on July 11, 2006, instead ruling that Judge McCoy lifted the stay at the initial status conference on August 17, 2004. The trial court determined that the five-year period expired on October 23, 2006, and because the trial had not been set by that date dismissed the action.
Plaintiff filed a timely notice of appeal. Pursuant to a request from this court, the parties addressed the consequences of the trial court's failure to rule on the motion to dismiss under section 583.210.

DISCUSSION

I. Dismissal Under Sections 583.310 and 583.360 for Plaintiff's Failure to Bring Her Action to Trial Within the Five-year Period

Plaintiff contends that the trial court abused its discretion in dismissing her action under sections 583.310 and 583.360 for failure to bring the action to trial within the five-year period. Plaintiff contends that various periods of time should have been, but were not, excluded from the five-year period such that her action should not have been dismissed. We agree.

A. Standards of Review

"`In reviewing the lower court's dismissal of [an] action for failure to prosecute, the burden is on appellant to establish an abuse of discretion. *497 [Citation.] We will not substitute our opinion for that of the trial court unless a clear case of abuse is shown and unless there is a miscarriage of justice. [Citation.]' [Citation.]" (Sagi Plumbing v. Chartered Construction Corp. (2004) 123 Cal.App.4th 443, 447 [19 Cal.Rptr.3d 521].) The incorrect interpretation of the application of a statute is an abuse of discretion. (In re Lugo (2008) 164 Cal.App.4th 1522, 1536, fn. 8 [80 Cal.Rptr.3d 521].)
(1) We review the construction of a statute de novo. (Regents of University of California v. Superior Court (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808].) "`In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]' (People v. Lopez (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].) In other words, if there is `no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said,' and it is not necessary to `resort to legislative history to determine the statute's true meaning.' (People v. Cochran (2002) 28 Cal.4th 396, 400-401 [121 Cal.Rptr.2d 595, 48 P.3d 1148].)" (People v. Licas (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507].) "We begin by examining the statute's words, giving them a plain and commonsense meaning." (People v. Murphy (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

B. Application of Relevant Legal Principles

(2) An action must be brought to trial within five years after a plaintiff commences an action against a defendant. (§ 583.310.) An action is commenced within the meaning of section 583.310 upon the filing of the plaintiff's original complaint. (Bank of America v. Superior Court (1988) 200 Cal.App.3d 1000, 1010-1011 [246 Cal.Rptr. 521].) The time requirements for bringing an action to trial are "mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." (§ 583.360, subd. (b).) "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined. [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340.) (3) The trial court "shall" dismiss an action that is not timely brought to trial. (§ 583.360, subd. (a).)
On January 30, 2004, the trial court ordered that "all hearings, orders, motions, discovery or other proceedings are hereby stayed in all cases subject *498 of [sic] the petition for coordination until a determination whether coordination is appropriate." The petition for coordination was granted and this case was transferred to Judge McCoy. On August 2, 2004, Judge McCoy ordered that "all discovery, motion and pleading activity" was stayed. On August 17, 2004, Judge McCoy ordered the stay lifted "for the sole purpose of serving any unserved parties." Judge McCoy did not lift the August 2, 2004, stay. Neither did Judge Kuhl, except that on July 11, 2006, she lifted the stay only on discovery. Thus, there was in effect a stay as to any trial, and that stay was never removed. It might be argued that the August 2, 2004, stay constitutes a stay of the trial of the action under section 583.340, subdivision (b) that was never removed. But the parties do not make such an argument, and it appears that what occurred was a stay under section 583.340, subdivision (b) of the "prosecution . . . of the action" rather than a stay or enjoinder of the "trial of the action."
(4) The parties disagree on whether discovery stays constitute stays of the "prosecution . . . of the action" under section 583.340, subdivision (b). We have found no case that defines the term "prosecution" as it is used in subdivision (b) of section 583.340. In Melancon v. Superior Court (1954) 42 Cal.2d 698 [268 P.2d 1050], however, our Supreme Court stated that the taking of depositions constitutes "a step in the `prosecution'" of an action. (Id. at p. 707.) The Supreme Court based this statement on its earlier holding in Ray Wong v. Earle C. Anthony, Inc. (1926) 199 Cal. 15, 18 [247 P. 894], in which it stated, "`The term "prosecution" is sufficiently comprehensive to include every step in an action from its commencement to its final determination.'" (Melancon v. Superior Court, supra, 42 Cal.2d at pp. 707-708.) We construe Melancon v. Superior Court and Ray Wong v. Earle C. Anthony, Inc., as standing for the proposition that the "prosecution" of an action is a broad concept encompassing all of the various steps in an action, including, but not limited to, pleading, discovery, and law and motion. Each of the various steps in an action constitutes "prosecution" of that action.

1. Stays of prosecution under section 583.340, subdivision (b)

Plaintiff argues that a partial stay, such as a stay of discovery, is a "stay" of the "prosecution" of an action covered by subdivision (b) of section 583.340.[5] Respondents argue that subdivision (b) of section 583.340 excludes only those stays that concern the prosecution of the entire action, not stays that concern only certain aspects of the prosecution of an action. We agree with plaintiff.
*499 (5) In Holland v. Dave Altman's R. V. Center (1990) 222 Cal.App.3d 477, 482 [271 Cal.Rptr. 706], the Court of Appeal addressed the meaning of the term "stay" in subdivision (b) of section 583.340 and stated, "The parties cite no reported decisions construing the term `stay' as used in section 583.340, and we have found none. However, the term appears to have a commonly understood meaning as an indefinite postponement of an act or the operation of some consequence, pending the occurrence of a designated event. Thus, in People v. Santana (1986) 182 Cal.App.3d 185, 190 [227 Cal.Rptr. 51], a case involving the stay of a sentence, the court concluded that `[a] stay is a temporary suspension of a procedure in a case until the happening of a defined contingency.' Black's Law Dictionary (5th ed. 1979) page 1267 defines the term as `a suspension of the case or some designated proceedings within it.'" We agree with the view expressed in Holland v. Dave Altman's R. V. Center that a "stay" within the meaning of subdivision (b) of section 583.340 includes "`a temporary suspension of a procedure in a case'" (Holland, at p. 482) or a suspension of designated proceedings within a case.
That a stay of certain types of proceedings within an actiona partial stay of an actionis a stay of prosecution under subdivision (b) of section 583.340, is consistent with the general policy favoring trial over dismissal for failure to prosecute an action.[6] In Ocean Services Corp. v. Ventura Port Dist. (1993) 15 Cal.App.4th 1762, 1774 [19 Cal.Rptr.2d 750], the Court of Appeal stated, "Code of Civil Procedure section 583.340, subdivision (b), provides that the five-year period `shall be' tolled if `[p]rosecution or trial of the action was stayed or enjoined.' The statute is unconditional and is intended to have uniform application. `"This is consistent with the treatment given other statutory excuses; it increases certainty and minimizes the need for a judicial hearing to ascertain whether or not the statutory period has run." (17 Cal. Law Revision Com. Rep. (Jan. 1984) p. 919.) It also is consistent with the general policy favoring trial over dismissal. (§ 583.130.)' (Holland v. Dave Altman's R. V. Center (1990) 222 Cal.App.3d 477, 484 [271 Cal.Rptr. 706].)" It would be unfair to force a party to request a trial when it has been deprived of an element of pretrial proceedings. The suggestion that this interpretation is flawed because it requires the implicit addition of a word to the statute "partial" before the word "stay"equally applies to respondents' interpretation that is necessarily premised on the implicit addition of the word "entire" before the word "stay."
Plaintiff contends that the trial court erred in failing to exclude, under section 583.340, subdivision (b), three periods *500 from the five-year period within which plaintiff was to bring her action to trial: the 49-day period from May 24, 2000, to July 12, 2000; the 43-day period from December 3, 2003, to January 15, 2004; and the 708-day period from August 2, 2004, to July 11, 2006.

a. May 24, 2000, to July 12, 2000-49 days

As set forth above, on May 24, 2000, the trial court issued a minute order staying discovery until the entry of a case management order. On June 16, 2000, the trial court entered a case management order that, in part, lifted the May 24, 2000, discovery stay. On July 12, 2000, the trial court "further clarified" its prior order with respect to reopening discovery and ordered that except for certain interrogatories, all prior discovery, if deemed necessary or advisable, would have to be re-served and that all prior discovery motions remained vacated. Because a discovery stay is a stay of prosecution under section 583.340, subdivision (b), the trial court should have excluded the 23 days from May 24, 2000, to June 16, 2000, from the five-year period within which plaintiff was to bring her action to trial.
Plaintiff contends that the trial court's June 16, 2000, case management order that states, "On May 24, 2000, this Court stayed discovery pending entry of a Case Management Order . . . . The stay on discovery is hereby lifted" did not lift the May 24, 2000, discovery stay. Instead, plaintiff contends that the trial court intended the stay to continue beyond June 16, 2000, and that the discovery stay was not lifted until the trial court's order on July 12, 2000. As support for this contention, plaintiff notes that the notice of ruling for the May 24, 2000, hearing states, "All discovery, discovery issues and motions are stayed pending further order of the Court"; at the June 16, 2000, hearing, the trial court "simultaneously" entered the case management order and vacated two discovery motions pursuant to the May 24, 2000, order; and, on July 12, 2000, the trial court ordered that all discovery that had been propounded prior to the stay would have to be re-served.
Plaintiff is mistaken. The trial court entered a discovery stay on May 24, 2000, and ordered that stay lifted on June 16, 2000. That the trial court vacated two discovery motions and lifted the discovery stay on the same date and later clarified that its prior order lifting the discovery stay required that previous discovery be re-served does not manifest the intent to continue the stay.

b. December 3, 2003, to January 15, 2004-43 days

On December 3, 2003, the trial court held a review hearing at which it stayed all discovery. On January 15, 2004, the trial court lifted the stay. The *501 trial court should have excluded the 43 days from December 3, 2003, to January 15, 2004, from the five-year period within which plaintiff was to bring her action to trial because, as we have held, a discovery stay is a stay of prosecution under section 583.340, subdivision (b).

c. August 2, 2004, to July 11, 2006-708 days

On August 2, 2004, Judge McCoy set an initial status conference for August 17, 2004. In that order, Judge McCoy ordered, "To facilitate the orderly conduct of this action, all discovery, motion and pleading activity is temporarily stayed pending further order of this court." At the initial status conference on August 17, 2004, Judge McCoy ordered, "The Stay is lifted for the sole purpose of serving any unserved parties." Judge McCoy also set October 22, 2004, for "hear[ing] any Motions Re Lifting Stay so as to Enforce Existing Judgment."[7]
In discussing this time period in its ruling on respondents' motion to dismiss plaintiff's fifth amended complaint, the trial court ruled that Judge McCoy lifted the August 2, 2004, stay on August 17, 2004. The trial court said, "However, as discussed above, that `further order' came when Judge McCoy held an Initial Status Conference on August 17, 2004, and lifted the stay." The prior discussion to which the trial court apparently refers is to its earlier comments in its order: "The court gave its `further order' and the temporary stay was lifted when the court held its Initial Status Conference on August 17, 2004. (ECX Supplemental Brief, Notice of Lodgment, Exh. CCC, 08/17/04 Minute Order at 2: `The Stay is lifted for the sole purpose of serving any unserved parties.') Therefore, only the period from August 2, 2004, the date of Judge McCoy's Initial Status Conference order temporarily staying proceedings, to August 17, 2004, the date of the Initial Status Conference when Judge McCoy lifted the temporary stay, counts to toll the five-year statutory period." This prior discussion confirms that Judge McCoy lifted the stay only for a very narrow purposeto serve any unserved parties. Moreover, the preceding paragraph in Judge McCoy's minute order demonstrates that Judge McCoy did not lift the August 2, 2004, stay in its entirety. In that paragraph, Judge McCoy set October 22, 2004, for motions to lift the stay "to enforce [an] existing judgment." If Judge McCoy had entirely lifted the August 2, 2004, stay, there would have been no need to set such a hearing date.
On April 20, 2005, the trial court entered a discovery order requiring, among other things, that respondents respond to specified interrogatories and *502 document requests; the commencement of a deposition for Fax.com, Inc.; and the permission that other depositions be scheduled. The trial court did not otherwise lift the discovery stay imposed on August 2, 2004. On July 11, 2006, the trial court "lifted the stay on discovery, and ordered that the parties may conduct open discovery." Accordingly, because the August 2, 2004, stay was not lifted until July 11, 2006, and a partial stay is a stay of prosecution of the action under section 583.340, subdivision (b), the trial court should have excluded the 708 days from August 2, 2004, to July 11, 2006, from the five-year period within which plaintiff was to bring her action to trial.

2. The Trial Court's Active Management of Litigation

Respondents contend that the stays at issue under section 583.340, subdivision (b)May 24, 2000, to June 16, 2000; December 3, 2003, to January 15, 2005; and August 2, 2004, to July 11, 2006were part of the trial court's active management of plaintiff's action and, thus, should be included within the five-year period. In support of their argument, respondents rely on California Rules of Court, rules 3.400(a) and 3.541(b).[8] Rule 3.400(a) provides, "A `complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel."[9] Rule 3.541(b) provides, in part, "The coordination trial judge must assume an active role in managing all steps of the pretrial, discovery, and trial proceedings to expedite the just determination of the coordinated actions without delay."[10] That these periods were part of the trial court's active management of plaintiff's action, respondents contend, is demonstrated by the fact that "substantial litigation activity"such as discovery and the filing of pleadings and motionsoccurred during these periods.
Although discovery was conducted during the period after Judge McCoy's August 2, 2004, order that included a stay of all discovery, that discovery was limited. Judge McCoy's August 17, 2004, order lifted the stay "for the sole purpose of serving any unserved parties" and did not permit discovery, and Judge Kuhl's April 20, 2005, discovery order required and permitted only certain discovery. It was not until July 11, 2006, that Judge Kuhl "lifted the stay on discovery, and ordered that the parties may conduct open discovery." Although within the stay period, there was limited discovery, status conferences, and certain pleading-related activity, the fact remains that Judge McCoy's August 17, 2004, order lifted the stay for a limited purpose and *503 respondents have not identified any subsequent orderapart from Judge Kuhl's July 11, 2006, orderthat lifted the stay. The stay order prevented plaintiff from fully conducting all of the pretrial activities to which she was entitled. That certain activity specifically authorized by the trial court occurred, does not alter that fact. Thus, "[p]rosecution . . . of the action was stayed." (§ 583.340.)
(6) Respondents' contention that the periods contested under subdivision (b) of section 583.340 were subject to the trial court's active management of plaintiff's action and, thus, should be included within the five-year period is unavailing. Respondents cite no case, rule of court, or Code of Civil Procedure section that exempts a trial court's actions in actively managing a complex or coordinated action from the provisions of subdivision (b) of section 583.340. When a trial court issues a partial staysuch as a stay of discoveryin its active management of a complex or coordinated action, thus impeding a plaintiff's prosecution of the action, the period of such impediment is excluded from the five-year period under section 583.340, subdivision (b).[11]
Respondents further contend that any argument that the trial court's active management of plaintiff's action prevented plaintiff from bringing her action to trial should be rejected because the plaintiff in Amkraut v. Pacific Coast Office Products, an action coordinated with plaintiff's action here, brought that action to trial within the five-year period even though the action was filed nearly nine months after plaintiff here filed her action. Plaintiff does not argue that the trial court's active management of her action prevented her from timely bringing her action to trial. Plaintiff argues that the trial court should have excluded the contested periods from the five-year period because these periods were stays within the meaning of subdivision (b) of section 583.340. Moreover, the ability of another party in a different, coordinated action to move successfully to certify a class and to bring that action to trial more expeditiously than plaintiff did here may have been the result of any number of factors not before us, such as less complex pleadings, less discovery, fewer discovery disputes, or fewer defendants. What transpired in a different action, even if coordinated, has no bearing on the application of sections 583.310 and 583.360 to this action. As shown here, trials of coordinated actions may occur separately. (Rule 3.541(b)(2).)
Respondents finally contend that if plaintiff was dissatisfied with the trial court's active management of her action, she was under a duty to challenge *504 the status quo or alert the trial court to the potential running of the five-year period. But if the periods discussed above are excluded from the five-year period under subdivision (b) of section 583.340, as they should be, there was no impending running of the five-year period about which plaintiff should have alerted the trial court.

3. Impossible, impracticable, or futile under section 583.340, subdivision (c)

(7) The plaintiff has the burden of proving that it was impossible, impracticable, or futile to bring an action to trial within the five-year period in sections 583.310 and 583.360. (Tamburina v. Combined Ins. Co. of America (2007) 147 Cal.App.4th 323, 329 [54 Cal.Rptr.3d 175].) The impossibility, impracticability, and futility exceptions to the five-year dismissal statute "must be interpreted liberally, consistent with the policy favoring trial on the merits." (Baccus v. Superior Court (1989) 207 Cal.App.3d 1526, 1532 [255 Cal.Rptr. 781].) "[T]he critical factor in applying these exceptions is whether the plaintiff exercised reasonable diligence in prosecuting her case. Thus, the five-year dismissal statute may not be applied if plaintiff is unable to bring her suit to trial due to causes beyond her control, nor should it penalize conduct that is entirely reasonable." (Taylor v. Hayes (1987) 199 Cal.App.3d 1407, 1410 [245 Cal.Rptr. 613]; see Sanchez v. City of Los Angeles (2003) 109 Cal.App.4th 1262, 1273 [135 Cal.Rptr.2d 869] ["For the tolling provision of section 583.340 to apply, there must be `a period of impossibility, impracticability or futility, over which plaintiff had no control . . . .'"].)
"The determination whether it was `impossible, impracticable, or futile' to bring a case to trial within a given time period is generally fact specific, depending on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles. [Citation.]" (Howard v. Thrifty Drug & Discount Stores (1995) 10 Cal.4th 424, 438 [41 Cal.Rptr.2d 362, 895 P.2d 469].) An action is not tolled for delays that a plaintiff, with reasonable diligence, might have avoided. (Lauriton v. Carnation Co. (1989) 215 Cal.App.3d 161, 165 [263 Cal.Rptr. 476].) In Lauriton v. Carnation Co., the plaintiff claimed that it was impossible, impracticable, or futile for him to prosecute his action during his bankruptcy. (Ibid.) The Court of Appeal rejected the plaintiff's tolling claim because the plaintiff could have sought relief from the bankruptcy court to prosecute his action. (Ibid.) Because the plaintiff failed to use every reasonable effort to bring his action to trial, the Court of Appeal held, the plaintiff did not exercise reasonable diligence in prosecuting his case. (Ibid.)
Plaintiff contends that the trial court erred in failing to exclude, under section 583.340, subdivision (c), three periods from the five-year period *505 within which plaintiff was to bring her action to trial.[12] Plaintiff contends that the trial court should have excluded the 76-day period from March 9, 2000, to May 24, 2000, the 88-day period from May 6, 2004, to August 2, 2004, and the 298-day period (during which ECX and CSB Partnership were in default)[13] from January 15, 2004, to November 8, 2004. In contrast to the periods plaintiff contends should have been excluded under section 583.340, subdivision (b), these periods are not periods during which a stay was imposed. Instead, they are periods during which plaintiff contends she could not prosecute her action due to some cause beyond her control that made it "impossible, impracticable, or futile" to bring her action to trial. (§ 583.340, subd. (c).)

a. March 9, 2000, to May 24, 2000-76 days

On March 9, 11, and 24, 2000, plaintiff served demands for inspection of documents, special and form interrogatories, and requests for admissions on defendants not parties to this appeal. Thereafter, plaintiff filed 10 motions to compel responses to her discovery. On May 24, 2000, the trial court imposed a discovery stay and ruled that eight of plaintiff's 10 pending discovery motions were rendered "moot" by the stay. On June 16, 2000, the trial court lifted the May 24, 2000, discovery stay and ruled that plaintiff's two remaining motions to compel were "moot" and ordered them vacated. On July 12, 2000, the trial court, clarifying its prior order reopening discovery, ruled that, except for certain identified interrogatories, all previously propounded discovery would have to be re-served, and all discovery motions remained "moot" and vacated.
Discovery is an essential component of bringing an action to trial. Plaintiff commenced her action on February 22, 2000, and first propounded discovery on March 9, 2000. Plaintiff could not have begun discovery any earlier and, thus, was reasonably diligent in prosecuting her action. (Taylor v. Hayes, supra, 199 Cal.App.3d at p. 1410.) The trial court's orders of May 24, 2000, and June 16, 2000, as clarified by the trial court's July 12, 2000, order, rendered nugatory plaintiff's discovery activity during the period from March 9, 2000, to May 24, 2000, i.e. prior to the stay. The trial court's actions were beyond plaintiff's control (ibid.; Sanchez v. City of Los Angeles, supra, 109 Cal.App.4th at p. 1273), and the delay in discovery brought about by the trial *506 court's orders was not a delay that plaintiff, with reasonable diligence, might have avoided (Lauriton v. Carnation Co., supra, 215 Cal.App.3d at p. 165).
Respondents acknowledge that the trial court's orders voided plaintiff's discovery during the contested period, but argue that other litigation activity was conducted during the period, including other discovery. Respondents point out that during the contested period, ECX answered plaintiff's interrogatories on April 13, 2000, CSB Partnership responded to plaintiff's first set of document requests on May 15, 2000, and CSB Partnership produced responsive documents on May 18, 2000. The discovery to which respondents refer was responded to prior to the trial court's orders. That other litigation activity, including certain discovery, was conducted during the period of March 9, 2000, to May 24, 2000, does not change the fact that the trial court's orders, in effect, rendered all of plaintiff's discoveryapart from discovery already completed at the time of the trial court's orders inoperative. The trial court's action eliminated what was done during an earlier period; obviously it was impossible for plaintiff to conduct discovery during a period that had already passed.
Citing Gentry v. Nielsen (1981) 123 Cal.App.3d 27, 35-36 [176 Cal.Rptr. 385] and Tejada v. Blas (1987) 196 Cal.App.3d 1335, 1340-1341 [242 Cal.Rptr. 538], respondents argue that the five-year period for bringing an action to trial is not extended for discovery disputes. Although plaintiff's motions to compel responses to discovery were filed during the period in question and ordered vacated by the trial court, the basis for plaintiff's contention that the period from March 9, 2000, to May 24, 2000, should have been excluded from the five-year period is not that a discovery dispute prevented her from conducting the discovery during that period; rather it is that the trial court's orders, in effect, nullified her discovery.
Because plaintiff acted with reasonable diligence and could not have avoided the delay in discovery, plaintiff met her burden her of proving that it was impossible, impracticable, or futile with respect to the discovery at issue during the 76 days from March 9, 2000, to May 24, 2000. (Tamburina v. Combined Ins. Co. of America, supra, 147 Cal.App.4th at p. 329.) Accordingly, the trial court should have excluded that period from the five-year period within which plaintiff was to bring her action to trial.

b. May 6, 2004, to August 2, 2004-88 days

On May 6, 2004, Judge McCoy was designated as the judge for coordination proceedings. In support of plaintiff's opposition to respondent's motion to dismiss the fifth amended complaint, plaintiff's counsel submitted a supplemental declaration in which he declared that he contacted the trial *507 court on May 27, 2004, following Judge McCoy's appointment, to inquire about resetting for hearing discovery motions that had been filed but not yet been heard. Plaintiff's counsel was told that the trial court was awaiting the transfer of court files for the various actions and could not do anything until it had the files.
Plaintiff's counsel declares that on June 23, 2004, he called the trial court to determine if the file for plaintiff's action had been received. Plaintiff's counsel was told that the file had not yet arrived. Plaintiff's counsel intended to "follow-up" with the trial court but did not do so after receiving a copy of a letter dated July 28, 2004 (from counsel for a plaintiff in a coordinated action not a party to this appeal), to the trial court that noted that the preferred time for holding a preliminary trial conference after Judge McCoy's designation had passed (citing former rule 1541(a)) and requested that Judge McCoy set a hearing for a pending motion for preliminary injunction. On August 2, 2004, Judge McCoy issued the initial status conference order that stayed plaintiff's action pending further order of the court. Plaintiff's counsel declares that based on his conversations with the trial court, he understood that the actions coordinated before Judge McCoy were in abeyance pending transfer of the files.
We agree with plaintiff that the trial court held her action in abeyance pending receipt of her court file and the court files of the other coordinated actions. Plaintiff was reasonably diligent in prosecuting her action during this period, contacting the trial court on May 27, 2004, to schedule a hearing of discovery motions and contacting the trial court again on June 23, 2004, to determine if the trial court had received her court file. (Taylor v. Hayes, supra, 199 Cal.App.3d at p. 1410.) Plaintiff's inability to proceed with her discovery motions during this time was beyond her control (ibid.; Sanchez v. City of Los Angeles, supra, 109 Cal.App.4th at p. 1273), and the delay in discovery brought about by the absence of her court file was not a delay that plaintiff, with reasonable diligence, might have avoided (Lauriton v. Carnation Co., supra, 215 Cal.App.3d at p. 165).
(8) We disagree with plaintiff, however, as to the period during which the abeyance in her action tolls the five-year period. "The text of section 583.340 impels the view that there must be a causal connection between the circumstance upon which plaintiff relies and the failure to satisfy the five-year requirement. Bringing the action to trial must be impossible, impracticable, or futile for the reason proffered." (Sierra Nevada Memorial-Miners Hospital, Inc. v. Superior Court (1990) 217 Cal.App.3d 464, 473 [266 Cal.Rptr. 50] [addressing a claim of tolling under subd. (c) of § 583.340]; see also Sanchez v. City of Los Angeles, supra, 109 Cal.App.4th at pp. 1271-1272.) Because plaintiff's counsel was unaware until May 27, 2004, that the trial *508 court would take no action with respect to plaintiff's case because it did not have plaintiff's court file, there was no causal connection between the abeyance in her action from May 6, 2004, to May 27, 2004, and plaintiff's failure to bring her action to trial within five years.
Because plaintiff acted with reasonable diligence and could not have avoided the abeyance in her action during the period from May 27, 2004, to August 2, 2004, plaintiff met her burden her of proving that it was impossible, impracticable, or futile to bring the discovery motions at issue during this period. (Tamburina v. Combined Ins. Co. of America, supra, 147 Cal.App.4th at p. 329.) Accordingly, the trial court should have excluded the 67-day period from May 27, 2004, to August 2, 2004, from the five-year period within which plaintiff was to bring her action to trial.

c. January 15, 2004, to November 8, 2004-298 days

Plaintiff obtained entry of ECX's default on January 15, 2004, and CSB Partnership's default on January 23, 2004. On November 8, 2004, the trial court set aside the entry of both defaults. In support of her contention that the trial court should have excluded the periods during which ECX and CSB Partnership were in default from the five-year period within which she was to bring her action to trial, plaintiff relies on Howard v. Thrifty Drug & Discount Stores, supra, 10 Cal.4th 424. In Howard v. Thrifty Drug & Discount Stores, the California Supreme Court stated that the exception to the five-year period for impossibility, impracticability, or futility "almost invariably" applies "when a default judgment has been entered in favor of the plaintiff, effectively bringing the litigation to a standstill." (Id. at p. 438.) The Supreme Court further stated, "In the context of a default judgment, courts have held that a reasonable period of time between the defendant's default and the entry of the default judgment should also be excluded from the calculation of the five-year period." (Id. at pp. 438-439.)
Plaintiff's reliance on Howard v. Thrifty Drug & Discount Stores, supra, 10 Cal.4th 424 is misplaced. In Howard v. Thrifty Drug & Discount Stores, the Supreme Court discussed a situation in which a default judgment is entered and litigation is thereby effectively brought to a standstill. (Id. at p. 438.) Here, plaintiff did not obtain a default judgment against ECX or CSB Partnership; it only obtained entry of the defaults. The Supreme Court in Howard v. Thrifty Drug & Discount Stores also stated that a plaintiff must exercise reasonable diligence in overcoming obstacles. (Id. at p. 438; see also Lauriton v. Carnation Co., supra, 15 Cal.App.3d at p. 165 [an action is not tolled for delays that a plaintiff, with reasonable diligence, might have avoided].) Plaintiff took no steps to obtain entry of default judgments and, thus, was not reasonably diligent in the prosecution of her action. Plaintiff *509 contends that she was prevented from obtaining default judgments by the various stays the trial court imposed and by the abeyance in her action which essentially covered the period from just after the entry of default against CSB Partnership until the trial court set aside entry of the defaults. It remains, however, that plaintiff could have sought relief from the trial court to obtain entry of default judgments but chose not to do so. Because plaintiff failed to exercise reasonable diligence to overcome the obstacles preventing entry of default judgments, the trial court properly rejected plaintiff's contention that the period during which ECX and CSB Partnership were in default should have been excluded from the five-year period within which plaintiff was to bring her action to trial. As we discuss, some of this period is excluded for other reasons.

C. Calculation of the Five-year Period[14]
The trial court ruled that three periods of time for a total of 607 days should be excluded from the five-year period within which plaintiff was to bring her action to trial. These periods are the 495 days from June 13, 2002, to October 21, 2003; the 97 days from January 30, 2004, to May 6, 2004; and the 15 days from August 2, 2004, to August 17, 2004.[15] Respondents agree with the trial court that these three periods should be excluded from the five-year period. The trial court added the additional 607 days to the end of the five-year period that would have elapsed on February 22, 2005, had the five-year period not been tolled for any period, and concluded that the five-year period expired on October 23, 2006. Because plaintiff had not moved to specially set her action for trial, and the trial did not commence within the five-year period as calculated by the trial court, the trial court granted respondents' motions to dismiss that were filed on November 22, 2006.
(9) In addition to the time periods the trial court excluded from the five-year period, the trial court also should have excluded, the 76-day period from March 9, 2000, to May 24, 2000; the 23-day period from May 24, 2000, to June 16, 2000; the 43-day period from December 3, 2003, to January 15, 2004; the 67-day period from May 27, 2004, to August 2, 2004; and the *510 708-day period from August 2, 2004, to July 11, 2006.[16] When added to the 607 days the trial court excluded from the five-year period, these additional periods provide plaintiff sufficient time within which to bring her action to trial, and there was no need for plaintiff to request a trial date or to move to specially set her action for trial.[17]

II., III.[*]

DISPOSITION
The judgment is reversed, and the matter remanded to the trial court to rule on the section 583.210 issues. Plaintiff is awarded her costs on appeal.
Armstrong, J., concurred.
TURNER, P. J., Dissenting.
The issue in this case is simple: Is a coordinated complex action stayed or its progress enjoined within the meaning of Code of Civil Procedure section 583.340, subdivision (b)[1] because it is subject to now well-established case management practices? My answer is, "No."
I respectfully disagree in two respects with the position of plaintiff, Dana Bruns. First, I disagree with her argument that the Los Angeles Superior Court proceedings were stayed except for a few days after the case was initially assigned to Judge Charles W. McCoy. It was never stayed by Judge Carolyn B. Kuhl. Second, even if there were something akin to a "partial stay," this case was not stayed or enjoined as that language is used in section 583.340, subdivision (b). Thus, I would affirm the dismissal pursuant to section 583.310.
First, I respectfully disagree with the argument of plaintiff that any meaningful stay of the action existed within the meaning of section 583.340, *511 subdivision (b) after Judge McCoy's initial stay order. Without the benefit of the time the case was pending in Los Angeles County, plaintiff's section 583.340, subdivision (b) arguments have no merit. Contrary to plaintiff's assertion, once the coordinated case was assigned to Los Angeles Superior Court in general and Judge McCoy in particular, the following occurred. After Judge McCoy issued his "temporary stay" order, a status conference was scheduled. On August 12, 2004, a joint status conference report was filed which discussed all relevant litigation issues. On August 17, 2004, Judge McCoy held a status conference and issued a minute order which does state the stay was lifted for the sole purpose of serving unserved parties. However, on August 17, 2004, Judge McCoy also scheduled a preliminary injunction hearing date and issued a briefing schedule; selected October 22, 2004, as the time to hear motions to set aside defaults; selected October 22, 2004, as the date to hear motions for interim attorney fees; also set on that date a hearing concerning lifting the stay to enforce existing judgments; and selected November 9, 2004, as a date for a discovery conference.
Extensive papers were filed on the preliminary injunction issue. On October 4, 2004, at a time when plaintiff claims the action was stayed, Judge McCoy denied the preliminary injunction request. On November 3, 2004, plaintiff's counsel sent a letter to the attorney for defendant, E-Commerce Exchange, Inc., raising discovery issues. On November 8, 2004, while plaintiff contends the present lawsuit was stayed, Judge McCoy granted the motions of defendants, E-Commerce Exchange, Inc., and CSB Partnership, to set aside their defaults. On November 9, 2004, Judge McCoy conducted a status conference and the issue of discovery was discussed. For the conference before Judge McCoy, plaintiff's counsel identified 17 pending discovery motions. Judge McCoy set a hearing of December 7, 2004, for plaintiff's 17 discovery motions. Hearing on the motion was later continued until February 4, 2005. Orders were also entered as to other plaintiffs. On November 12, 2004, plaintiff's counsel served a notice of hearing on the discovery motions. A similar notice was served by plaintiff's counsel on November 30, 2004.
Thereafter, effective January 3, 2005, notice was given that the coordinated action was assigned to Judge Kuhl for all purposes including trial. On January 12, 2005, plaintiff gave written notice of the reassignment. On February 1, 2005, plaintiffs, Joel and David Amkraut, who had filed a separate complaint but were part of the coordinated action, moved for class certification. On February 8, 2005, counsel for defendant, CSB Partnership, James H. Casello, who filed an opposition on January 3, 2005, requested the hearing on the 17 motions to compel be continued as he was unavailable on February 23, 2005. On February 23, 2005, the hearing on plaintiff's 17 motions to compel was continued until March 3, 2005, as requested by Mr. Casello.
*512 On March 3, 2005, at a time when plaintiff asserts the action was stayed, Judge Kuhl held her first status conference after the coordinated action was assigned to her for all purposes. Judge Kuhl ordered the parties to meet and confer concerning: a mediator; liaison counsel; an expert witness for all plaintiffs; "residual discovery issues"; a possible case management order; and a document preservation order. As to plaintiff's case: the 17 motions to compel were granted; responses were ordered served within 30 days; the sanctions motion was denied; and her attorney, Kevin M. Tripi, was ordered to prepare a written order. All defendants and their officers, agents, and counsel, were ordered to preserve all evidence relevant to the operative complaints including "fax broadcast records." Judge Kuhl made various orders as to other plaintiffs. Another status conference was set for one week later on March 8, 2005. At no time during the March 3, 2005 hearing did Judge Kuhl say anything about any stay. On March 8, 2005, Judge Kuhl: assigned liaison counsel; ordered all parties to "sign up with LexisNexis File and Serve" as previously ordered by Judge McCoy; ordered all counsel, including plaintiff's attorney, Mr. Tripi, to provide service lists to all plaintiffs' liaison counsel; ordered all plaintiffs' liaison counsel to file the service list with the clerk by April 4, 2005; stated she would hold a mandatory settlement conference; ordered that any objections to her holding a mandatory settlement conference be filed by April 11, 2005; ordered all plaintiffs to file a proposed discovery plan by April 12, 2005; ordered defendants to file their proposed discovery plans by April 12, 2005; designated a document repository; and directed defendants to produce all applicable insurance policies which might insure the claims in the complaints, including comprehensive general liability policies, to the document depository by March 23, 2005. A further status conference was set for April 15, 2005. At no time during the March 8, 2005 status conference did Judge Kuhl say anything about any stay. On March 18, 2005, defendant, E-Commerce Exchange, Inc., deposited its insurance policy declarations page in the depository specified by Judge Kuhl. On March 12, 2005, Judge Kuhl signed a five-page order granting plaintiff's motions to compel which were previously orally granted on March 3, 2005. On April 12, 2005, all plaintiffs' liaison counsel filed a discovery plan.
On April 15, 2005, a status conference was held which scheduled the time to object to the proposed discovery order. An order to show cause regarding sanctions was issued because of noncompliance with Judge Kuhl's March 3, 2005 orders. The order to show cause was directed at defendant, Fax.com, Inc., for allegedly failing to deposit papers with the document depository. At no time during the April 15, 2005 hearing did Judge Kuhl say anything about any stay. On April 20, 2005, Judge Kuhl issued a comprehensive 21-page discovery order. Among the aspects of Judge Kuhl's discovery order were the following requirements: all plaintiffs' liaison counsel was to serve a list of defendants' advertisers who were to be deposed; the list was to include a *513 proposed schedule for the depositions; each individual plaintiff's attorney was to advise all plaintiffs' liaison counsel by May 3, 2005, in writing as to what advertisers he or she desired to depose; after consideration of all plaintiffs' liaison counsel's report, a schedule of the depositions would be set at the next status conference; all plaintiffs' liaison counsel was ordered to serve subpoenas, including letters rogatory or commissions in order to secure facsimile transmission database information; discovery produced in plaintiff's case be made available to any other party upon request; copies of documents and tangible things produced in plaintiff's case were ordered deposited with the document depository within 20 days; and all counsel could review the documents produced in this case. Judge Kuhl's April 20, 2005 discovery order noted that additional use of discovery devices may be appropriate. In addition, Judge Kuhl: ruled that the only permissible objections to court ordered discovery were lawyer-client and work product privileges; ordered privilege logs be served June 27, 2005; ordered that discovery close by September 15, 2005; and allowed all plaintiffs' liaison counsel to modify a due date for discovery in writing. Judge Kuhl's discovery order concluded: "This is an order of the Court. Non-compliance by any party will be enforced by the issuance of an Order to Show cause why sanctions should not be imposed, and the potential imposition of sanctions for [noncompliance]." On April 28, 2005, defendant, E-Commerce Exchange, Inc., deposited its entire insurance policy in the depository. Also, on April 28, 2005, Mr. Tripi wrote Mr. Casello regarding outstanding disclosure obligations.
On May 3, 2005, Mr. Tripi wrote Judge Kuhl and requested that an order to show cause be issued concerning several defendants who are not parties to this appeal. Mr. Tripi explained these defendants had not complied with Judge Kuhl's March 12, 2005 order in certain respects. Mr. Tripi reminded Judge Kuhl of her March 12, 2005 discovery order. On May 9, 2005, Judge Kuhl issued orders concerning a privilege log. On May 11, 2005, all plaintiffs' liaison counsel filed a proposed deposition schedule and order concerning documents in the possession of Fax.com. On May 13, 2005, Mr. Tripi again complained to Mr. Casello about unresolved discovery obligations. On May 17, 2005, Judge Kuhl ordered documents in the possession of Fax.com placed in the document depository.
On May 18, 2005, Judge Kuhl issued a 10-page deposition schedule for advertisers. Judge Kuhl ordered 29 depositions take place. Thirteen of the depositions were to occur at Mr. Tripi's office. Judge Kuhl's May 18, 2005 order contains four and one-half pages of instructions and definitions directed at the deponents. On May 27, 2005, counsel for defendant, E-Commerce Exchange, Inc., filed a notice his client could not comply with Judge Kuhl's order to file verified interrogatory answers and production responses. On May 28, 2005, all plaintiffs' liaison counsel served a copy of Judge Kuhl's May 18, 2005 order. On May 31, 2005, Mr. Casello sought additional time to *514 comply with Judge Kuhl's May 17, 2005 disclosure order. The request was made in connection with plaintiff's case. At a June 13, 2005 status conference, Judge Kuhl was advised there had been limited compliance with her discovery orders. At no time during the June 13, 2005 status conference did Judge Kuhl say anything about any stay. On June 14, 2005, a privilege log was filed by Mr. Casello on behalf of defendant, Fax.com. On July 19, 2005, Mr. Tripi wrote to counsel for defendant, E-Commerce Exchange, Inc., explaining that it was in violation of Judge Kuhl's discovery orders. On July 21, 2005, a status conference was held. Orders were issued concerning depositing documents in the document depository and a potential settlement. At no time during the July 21, 2005 status conference did Judge Kuhl say anything about any stay. On July 22 and 27, 2005, Mr. Tripi wrote to Mr. Casello. Mr. Tripi complained that various defendants represented by Mr. Casello remained in violation of Judge Kuhl's discovery orders.
On August 2, 2005, counsel for defendant, CSB Partnership, served a notice of deposit of telephone records maintained by Fax.com. On August 2, 2005, defendant, E-Commerce, Inc., served document demand responses. On August 10, 2005, plaintiff's counsel served a notice of 12 depositions. Two of the depositions were to involve employees of defendants, CSB Partnership and E-Commerce Exchange, Inc., who were most knowledgeable about the matters set forth in Judge Kuhl's May 18, 2005 order to testify pursuant to section 2025.230.[2]
On August 25, 2005, counsel for defendant, E-Commerce Exchange, Inc., Paul T. McBride, wrote Mr. Tripi and requested the scheduled deposition date be changed. Mr. McBride explained: "We will produce a `person most knowledgeable,' but you must understand that any person we can produce will have, in fact, very little knowledge of the subjects outlined in the Court's June 13, 2005, Order Setting Deposition Schedule for Defendant Advertisers." Also, on August 25, 2005, Mr. Casello gave notice that due to scheduling conflicts, he could not attend the scheduled depositions. Mr. Casello confirmed the scheduling conflicts in a letter to Mr. Tripi.
On August 26, 2005, a status conference was held. Judge Kuhl ordered defendant, E-Commerce Exchange, Inc., to provide plaintiff's counsel with original discovery verifications by September 2, 2005. Other orders were made as to litigants who are not parties to this appeal. The discovery cutoff *515 date was extended to November 1, 2005, and another status conference was set for September 22, 2005. At no time during the August 26, 2005 status conference did Judge Kuhl say anything about any stay. On August 30, 2005, Mr. Tripi and Mr. McBride, on behalf of defendant, E-Commerce Exchange, Inc., agreed to cancel the scheduled "person most knowledgeable" deposition. On August 31, 2005, Mr. Tripi sent a "meet and confer" letter to Mr. Casello. On September 1, 2005, defendant, E-Commerce Enterprise, Inc., served interrogatory answers. On September 30, 2005, Mr. Tripi again wrote Mr. Casello about violations of Judge Kuhl's discovery orders. On October 25, 2005, during a status conference, Judge Kuhl extended the discovery cutoff date until February 1, 2006. At no time during the October 25, 2005 status conference did Judge Kuhl say anything about any stay.
On November 10, 2005, at a status conference, Judge Kuhl issued an order certifying the class in the complaint filed by the Amkrauts. At no time during the November 10, 2005 status conference did Judge Kuhl say anything about any stay. As noted, the Amkrauts filed their original class certification motion on February 1, 2005. The hearing had been continued to allow further investigation. At the September 22, 2005 hearing on the class certification motion, the Amkrauts' counsel proposed a class and subclass definition which was certified by Judge Kuhl. Judge Kuhl's order refers to settlement which was disapproved on August 23, 2005.
On December 8, 2005, plaintiff moved for a deemed admitted order against various defendants and monetary sanctions. The next day, December 9, and again on December 21, 2005, Mr. Tripi wrote Mr. Casello about noncompliance with Judge Kuhl's orders. At the January 4, 2006 status conference, hearing on plaintiff's deemed admitted motion was continued until January 24. Nothing in the minute order for the January 4, 2006 status conference indicates that the issue of a stay was raised by Judge Kuhl or any party. On January 24, 2006, plaintiff filed a motion for leave to file a fifth amended complaint and for issuance of contempt orders against Mr. Casello and certain of his clients. At the February 15, 2006 status conference, plaintiff's January 24, 2006 unopposed motion for leave to file a fifth amended complaint was granted.
On January 24, 2006, a hearing was held on plaintiff's motion to deem matters admitted. On January 30, 2006, a status conference was held. At no time during the January 30, 2006 status conference did Judge Kuhl say anything about any stay of any proceedings. On February 10, 2006, plaintiff filed her fifth amended complaint which sought damages and injunctive relief for violations of the Telephone Consumer Protection Act of 1991, unfair competition, and negligence. On February 15, 2006, Judge Kuhl filed a written order granting plaintiff's deemed admitted and monetary sanctions *516 motions. At no time during the February 15, 2006 status conference did Judge Kuhl say anything about any stay. On March 24, 2006, plaintiff's request that an order to show cause issue as to why Mr. Casello and his client should not be held in contempt was granted. On April 2, 2006, plaintiff sought terminating and monetary sanctions against various defendants. On April 28, 2006, plaintiff's terminating sanctions motion was granted in part and denied in part. Monetary sanctions were imposed. At the April 28, 2006 status conference Judge Kuhl stated she intended to handle each case individually rather than collectively. Mr. Tripi stated he would begin to prepare class certification motions. At no time during the April 28, 2006 status conference did Judge Kuhl say anything about any stay.
On June 15, 2006, plaintiff amended the fifth amended complaint pursuant to section 474 to add seven fictitiously named defendants, Mark Nichols, CSB & Perez, LLC, CSB & Hinckley, LLC, CSB & McCray, LLC, CSB & Ellison, LLC, CSB & Humbach, LLC, and Chris and Tad Enterprises. On July 11, 2006, plaintiff's motion to compel interrogatory answers was granted and a further status conference was set for September 19, 2006. At no time during the July 11, 2006 status conference did Judge Kuhl say anything about any stay. On July 12, 2006, counsel for the "CSB related parties" agreed to accept service of the summons and fifth amended complaint. On September 19, 2006, a status conference was held and Mr. Tripi related that he had served new defendants. At no time during the September, 19, 2006 status conference did Judge Kuhl say anything about any stay. On October 6, 2006, an uncontested trial was conducted on the Amkrauts' complaint as to defendant, Fax.com, which is not a party to this appeal.
In my view, after Judge McCoy's initial ordernothing has been stayed. The foregoing is a litany of: numerous status conferences and orders; discovery disputes and orders including the issuance of terminating and monetary sanctions; depositions; an uncontested trial; class certification litigation; a class certification order as to two other plaintiffs; orders setting aside defaults; and the filing of amendments to complaints and answers thereto. Judge Kuhl never issued an order preventing any plaintiff from seeking class certification or a trial. As will be noted, at the status conferences any party could have raised any issue it wanted. With respect, plaintiff's "stay" or "enjoined" analysis confuses an action that cannot proceed materially with the case management process. If a case is being managed, that is not the same under these circumstances as it being stayed or its progress being enjoined. Judge Kuhl did not stay or enjoin the action; she managed it.
Second, if one assumes there was a partial stay of the action, I would affirm in any event because: section 583.340, subdivision (b) does not utilize the words "partial stay"; the Legislature has expressly prohibited judges from *517 modifying the express language in section 583.340, subdivision (b); the Law Revision Commission comment to section 583.340, subdivision (b) cites to a single decision which involves a stay as to all causes of action, parties, and issues; and plaintiff failed to comply with her obligation to make a motion to set the case for trial.
A partial stay is insufficient to toll the five-year rule. Section 583.340, subdivision (b) does not state that a partial stay of the action is excluded from the computation of the five-year period to bring the matter to trial. Section 583.360, subdivision (b) explicitly prohibits a court from modifying the language in section 583.340, subdivision (b) in any manner. Section 583.360, subdivision (b) states with clarity, "The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute." Plainly stated, plaintiff is asking us to insert the word "partially" before the words "stayed" or "enjoined" in section 583.340, subdivision (b). Section 583.360, subdivision (b) prohibits us from doing that.
Moreover, the Legislature has indicated its intention that the stay language in section 583.340, subdivision (b) only involves a complete, as distinguished from a partial, stay. The Law Revision Commission comment to section 583.340, subdivision (b) states: "Subdivision (b) codifies existing case law. See e.g., Marcus v. Superior Court [(1977)] 75 Cal.App.3d 204, [212-213] [141 Cal.Rptr. 890]." (Cal. Law Revision Com. com., 16 West's Ann. Code Civ. Proc. (2009 supp.) foll. § 583.340, p. 153.) The cited case, Marcus v. Superior Court, supra, 75 Cal.App.3d at page 209 involves a stay as to all causes of action, parties, and issues. And in Marcus, the Court of Appeal held that while the complete stay was in effect, it would be impossible and impracticable to bring the matter to trial thereby avoiding the effect of the section 583.310 five-year rule. (75 Cal.App.3d at pp. 212-213.) Thus, a partial stay of the type purportedly involved here is insufficient to toll the five-year rule because: the language of section 583.340, subdivision (b) does not use the term "partial stay"; section 583.360, subdivision (b) does not permit any modification to the language in section 583.340, subdivision (b); and any ambiguity in that regard is resolved by the Law Revision Commission comment which cites to the Marcus decision which involves a stay as to all causes of action, parties, and issues.
Given the language in section 583.340, subdivision (b), section 583.360, subdivision (b), and the Law Revision Commission comment, the important preference for trials on the merits, upon which plaintiff rests much of her analysis, changes little. Section 583.310 et seq. involves competing interests and obligations: the preference for trial on the merits over dismissal for failure to prosecute (§ 583.310; De Santiago v. D & G Plumbing, Inc. (2007) *518 155 Cal.App.4th 365, 370-371 [65 Cal.Rptr.3d 882]); the duty of the plaintiff `"at every stage of the proceedings'" to use due diligence to expedite final determination of the case (Crown Coach Corp. v. Superior Court (1972) 8 Cal.3d 540, 548 [105 Cal.Rptr. 339, 503 P.2d 1347], overruled on other grounds in Hocharian v. Superior Court (1981) 28 Cal.3d 714, 722, fn. 5 [170 Cal.Rptr. 790, 621 P.2d 829]); and encouraging the expeditious disposition of litigation, providing defendants the repose to which the law entitles them, and freeing the court's resources for the efficient adjudication of other claims. (Hughes v. Kimble (1992) 5 Cal.App.4th 59, 69-70 [6 Cal.Rptr.2d 616]; Ippolito v. Municipal Court (1977) 67 Cal.App.3d 682, 687 [136 Cal.Rptr. 795], disapproved on another point in Hocharian v. Superior Court, supra, 28 Cal.3d at p. 722, fn. 5.) These cross-purposes are such that applying them to this case is of little efficient pedagogical valuesection 583.340, subdivision (b), section 583.360, subdivision (b), and the Law Revision Commission comment say what they say and they say nothing of a partial stay.
Finally, our Supreme Court has held that the plaintiff has a duty to bring the approach of the five-year time limit to the attention of the trial judge. (Howard v. Thrifty Drug & Discount Stores (1995) 10 Cal.4th 424, 434 [41 Cal.Rptr.2d 362, 895 P.2d 469] [after judicial arbitration, plaintiff had the duty to move to specially set the case for trial]; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 11:202.28, p. 11-76 (rev. # 1, 2007).) It bears emphasis that this is a matter subject to the case management process. The court rules allow a plaintiff the opportunity to move to set a case for trial or to modify a prior case management order which did not set a trial date. As a coordinated action, the bench officer to whom the case was assigned by the Chief Justice possessed all the powers of a superior court judge. (Cal. Rules of Court, rule[3] 3.540(b) ["Immediately on assignment, the coordination trial judge may exercise all the powers over each coordinated action that are available to a judge of the court in which that action is pending."]; Bank of America v. Superior Court (1988) 200 Cal.App.3d 1000, 1009 [246 Cal.Rptr. 521].) The powers of a superior court judge include setting a case for trial as part of the case management process. In a class action, rule 3.762(b)[4] permits a party to notice a case conference in a class action where the issue of a trial date can *519 be raised. Only 20 days notice must be given. (Rule 3.762(d).) Here, plaintiff never made a request for a case conference where any problems pertinent to section 583.310 could have been obviated. It was plaintiff's duty to do so. Therefore, Judge Kuhl was warranted in dismissing the case.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts II. and III.
[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.
[2] In this appeal, ECX filed its own respondent's brief and joined the respondents' brief filed by the CSB defendants except for that part of the CSB defendants' brief that concerns dismissal of an action under Code of Civil Procedure section 583.210. The CSB defendants, which filed their own respondents' brief, joined ECX's respondent's brief. Flagstar Bank; Clayton Shurley doing business as Clayton Shurley's Texas BBQ; Clayton Shurley's Texas BBQ, Inc.; Clayton Shurley's Real BBQ, Inc.; Elliot McCrosky doing business as California Homefinders and E&N Financial; Daniel Quon; Daniel E. Quon, O.D., Inc.; and Fax.com, Inc., which with ECX and the CSB defendants collectively are referred to in this opinion as "respondents," did not file their own respondent's briefs but joined in the briefs of respondents ECX and the CSB defendants.
[3] The relevant notice of joinder lists "Clayton Shurley, an individual and dba Clayton Shurley's Texas BBQ, a California Corporation" as joining the motion, but not "Clayton Shurley's Texas BBQ, Inc."
[4] See footnote 2, ante.
[5] As set forth above, we review de novo the construction of a statute such as subdivision (b) of section 583.340. (Regents of University of California v. Superior Court, supra, 20 Cal.4th at p. 531.)
[6] Because the discovery stays at issue in this action were entire stays of discovery, we do not reach the issue of whether a stay with respect to a specific discovery devicesuch as a stay of a particular person's depositionis a stay under section 583.340, subdivision (b).
[7] The parties have not suggested that a proceeding on October 22, 2004, has any significance to the issues in this appeal.
[8] All rules citations are to the California Rules of Court unless otherwise noted.
[9] On July 12, 2000, the trial court ruled this action a complex action.
[10] The petition for coordination was granted on April 7, 2004, and assigned to Judge McCoy on May 6, 2004.
[11] With respect to the period from May 24, 2000, to June 16, 2000, the trial court's stay preceded its July 12, 2000, designation of plaintiff's action as complex and its April 7, 2004, grant of the petition for coordination. Thus, the May 24, 2000, stay could not have been subject to the trial court's active management of a complex or coordinated action pursuant to rule 3.400(a) or rule 3.541(b).
[12] As set forth above, we review for an abuse of discretion a grant of dismissal for failure to prosecute an action. (Sagi Plumbing v. Chartered Construction Corp., supra, 123 Cal.App.4th at p. 447.)
[13] Plaintiff also contends that, under subdivision (c) of section 583.340, the trial court should have excluded from the five-year period periods during which the trial court entered the partial stays discussed above. Because we hold that the trial court should have excluded such periods under subdivision (b) of section 583.340, we do not reach plaintiff's alternative argument that such periods also should have been excluded under subdivision (c).
[14] Respondents argue in connection with "futility and prejudice," that even if the trial court erred when it included some of the challenged time periods within the five-year period within which plaintiff was to bring her action to trial, the five-year period ran. As we explain in this part, in view of the time periods the trial court should have excluded from the five-year period, sufficient time remained within which plaintiff could bring her action to trial.
[15] The trial court also entered a complete stay on January 25, 2007, the date of oral argument on the motions to dismiss. Respondents do not contend that the period following January 25, 2007, should be included within the five-year period.
[16] The 708-day period from August 2, 2004, to July 11, 2006, must be reduced by the 15-day periodAugust 2, 2004, to August 17, 2004that the trial court, in calculating the 607-day exclusion period, excluded.
[17] It would appear that in any future calculation of the five-year period, the time between the November 22, 2006, filing of respondents' motions to dismiss and the trial court's January 25, 2007, stay should be included in the five-year period.
[*] See footnote, ante, page 488.
[1] Code of Civil Procedure section 583.340, subdivision (b) states: "In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed: [¶] . . . [¶] (b) Prosecution or trial of the action was stayed or enjoined." Unless otherwise indicated, all future statutory references are to the Code of Civil Procedure.
[2] Section 2025.230 states: "If the deponent named is not a natural person, the deposition notice shall describe with reasonable particularity the matters on which examination is requested. In that event, the deponent shall designate and produce at the deposition those of its officers, directors, managing agents, employees, or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to the deponent."
[3] Future references to a rule are to the California Rules of Court.
[4] Rule 3.762(a) and (b) state: "(a) Purpose [¶] One or more conferences between the court and counsel for the parties may be held to discuss class issues, conduct and scheduling of discovery, scheduling of hearings, and other matters. No evidence may be presented at the conference, but counsel must be fully prepared to discuss class issues and must possess authority to enter into stipulations. [¶] (b) Notice by the parties [¶] Notice of the conference may be given by any party. If notice is given by a named plaintiff, notice must be served on all named parties to the action. If notice is given by a defendant, notice must be served only on the parties who have appeared. Within 10 calendar days after receipt of the notice, the plaintiff must serve a copy on each named party who has not appeared in the action and must file a declaration of service. If the plaintiff is unable to serve any party, the plaintiff must file a declaration stating the reasons for failure of service."